USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/17/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUPERCOM, LTD.,

Plaintiff,

-against-

SABBY VOLATILITY WARRANT MASTER FUND LTD. and WEDBUSH SECURITIES, INC.,

Defendant.

21 Civ. 2857 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

Plaintiff, SuperCom Ltd. ("SuperCom"), brings this action for fraud, breach of contract, negligence, violation of federal securities laws, and defamation *per se* against Defendants Sabby Volatility Warrant Master Fund Ltd. ("Sabby") and Wedbush Securities, Inc. ("Wedbush"). Compl. ¶¶ 24–64, ECF No. 1-1. Before the Court is Sabby's motion to dismiss the sixth cause of action for defamation *per se*, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Mot., ECF No. 21. For the reasons below, Sabby's motion is GRANTED, and the sixth count of the complaint is DISMISSED.

**BACKGROUND**[1]

SuperCom is an Israeli corporation engaged in the design, manufacture, and sale of radio frequency identification products. Compl. ¶ 1. Sabby is a private equity fund with its principal place of business in the Cayman Islands. *Id.* ¶ 2. Wedbush is a broker-dealer. *Id.* ¶ 3. On July 7, 2020, SuperCom and Sabby entered into a stock purchase agreement, allowing Sabby to purchase a portion of SuperCom's equity shares. *Id.* ¶ 5. Sabby and SuperCom also entered an

---

[1] Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

agreement (the "Warrant Agreement") allowing Sabby to buy additional equity shares of SuperCom in the future at a set price (the "Warrant"). *Id.* The Warrant Agreement gave Sabby the ability to execute a "cashless exercise" of the Warrant if it met the terms set forth in the Warrant Agreement and applicable law, including providing SuperCom with notice of this exercise. *Id.* ¶ 6. SuperCom could object to the exercise within two business days, pursuant to the Warrant Agreement. *Id.* ¶ 7.

On March 19, 2021, Sabby initiated a cashless exercise, and sought initiation of the electronic transfer through the "Deposit/Withdrawal at Custodian" ("DWAC") system. *Id.* ¶¶ 8, 16. The same day, Rob Grundstein, Sabby's Chief Operating Officer and General Counsel, sent an email to Arie Trabelsi, of SuperCom, as well as to WedBush, the broker-dealer for the transaction, notifying them of the cashless exercise pursuant to the Warrant Agreement. *Id.* ¶ 10. This email was improperly transmitted, and Trabelsi did not receive it until March 23, 2021. *Id.* ¶ 13. In an email dated March 23, 2021, SuperCom informed Sabby that its warrant exercise notice was invalid, and directed Sabby to send a new notice that complied with the Warrant Agreement. *Id.* ¶ 14. Trabelsi also informed Wedbush that SuperCom had not approved issuance of the shares. *Id.* ¶ 16. However, Grundstein allegedly misrepresented to Wedbush that Sabby had authority to obtain the equity shares. *Id.* ¶ 15. Accordingly, Wedbush initiated the transfer through the DWAC system, which caused Sabby to receive 647,000 of SuperCom's shares. *Id.* ¶ 17.

In the process of communicating about the share transfer, in an email dated March 23, 2021, Grundstein told representatives of Wedbush and SuperCom, among others, that Sabby had been "inappropriately charged $125 for the DWAC" and that Sabby would not "return anything until [the $125 fee] is reimbursed to us as well as any fee we will be charged for the return."

Email at 1, ECF No. 28-1.[2] In the same email, Grundstein stated that "[SuperCom] is the dirtiest we have dealt with in 9 years of existence (we have invested in tens of thousands of companies – so that should speak volumes)" and that "[t]hese are the most filthy individuals we have ever encountered." Compl. ¶ 60; *see also* Email at 1. Grundstein also threatened to "sue [SuperCom] (AGAIN) for their breach, and they have no defense." Email at 1. At least ten individuals were included on this email, including Trabelsi, Wedbush, as well as SuperCom's transfer agent and attorney. Compl. ¶ 59. In its complaint, SuperCom seeks to hold Sabby liable for defamation on the basis of this email alone, arguing that Grundstein's words constitute *per se* defamation under New York law and that SuperCom is entitled to damages. *Id.* ¶¶ 58–64.

## DISCUSSION

### I. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers*, 282 F.3d at 153.

[2] SuperCom relies on and quotes substantially from the text of Grundstein's March 23, 2021 email. *Compare* Email *with* Compl. ¶ 60. The Court shall, therefore, consider the entirety of the March 23, 2021 email in deciding the motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

II.  Application

SuperCom brings a cause of action against Sabby for defamation on the basis of Grundstein's March 23, 2021 email, arguing that Grundstein's statements calling Sabby "the dirtiest we have dealt with" and "the most filthy individuals we have ever encountered" constitute defamation *per se*. Compl. ¶¶ 58–64.  Sabby moves to dismiss this cause of action on the ground that Grundstein's statements amount to a personal opinion, which is not actionable under New York law.  Def. Mem. at 6–8, ECF No. 22.  The Court agrees.

Defamation is the injury to one's reputation by either written or oral expression. *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  Under New York law, in order to state a claim for defamation, a plaintiff must establish (1) a false, defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault on the part of the defendant; and (4) either special damages or *per se* actionability.  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (quoting *Celle v. Filipino Rptrs. Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)).  A statement is defamatory if it exposes the plaintiff to "public hatred, shame . . . contempt, ridicule, aversion, . . . degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons." *Celle*, 209 F.3d at 177 (citation omitted).  A statement is defamatory *per se* if it "tend[s] to injure another in his or her trade, business, or profession." *Stern v. Cosby*, 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009) (citation omitted).

The question of whether particular statements are defamatory "presents a legal question to be resolved by the [Court] in the first instance." *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985)).  In making such determinations, the New York Court of Appeals instructs that federal courts must construe the offending statement "in the context of the entire statement or publication as a whole, [and] test[] [it] against the

understanding of the average reader." *Aronson*, 483 N.E.2d at 1139. Further, courts should not "strain" to interpret a statement in the "mildest and most inoffensive sense,"—rather, a "fair reading controls." *Celle*, 209 F.3d 163, at 177 (citation omitted).

A. Opinion

Under New York law, expressions of opinion do not give rise liability for defamation, no matter how offensive the statement. *See Mann v. Abel*, 885 N.E.2d 884, 885–86 (N.Y. 2008). Whether particular statements constitute fact or opinion is a question of law for the Court to determine. *Celle*, 209 F.3d at 178 (citation omitted). In making this determination, courts consider first, whether the specific language at issue has a precise meaning which is readily understood; second, whether the statements are capable of being proven true or false; and third, whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances signal to readers that what is being read is likely to be opinion, not fact. *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993). "Application of these three factors is not rigid and mechanical, and no single factor is dispositive." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 376 (S.D.N.Y. 1998).

Applying these principles, the Court concludes that the statements at issue do not constitute actionable facts for purposes of a defamation claim. As to the first prong of the inquiry, Plaintiff argues that because the terms "dirty" and "filthy" have dictionary definitions, these words have a "precise meaning" easily discernable to the average reader. *See* Pl. Opp. at 5, ECF No. 24. But, the use of an adjective like "dirty" or "filthy" is a "term that adds relativity, and therefore uncertainty," to the meaning of the statement—what one person considers to be dirty, another may not. *Wexler v. Dorsey & Whitney, LLP*, No. 18 Civ. 3066, 2019 WL 5485265, at *7 (E.D.N.Y. Oct. 25, 2019). And for this reason, courts in this district have

repeatedly concluded that such descriptors are opinion, rather than actionable statements of fact. *E.g.*, *Finkelstein v. Wachtel*, No. 00 Civ. 2672, 2003 WL 1918309, at *6–7 (S.D.N.Y. Apr. 21, 2003) (consultant's statements that company's leader was a "crook" who ran a "very dirty business" were "colloquial, loose, figurative terms" that did not constitute defamation).

SuperCom nevertheless argues that Grundstein's use of the superlative form of these verbs, comparing SuperCom "to all other similarly situated businesses . . . imbues [Grundstein's] comments with a precise and exacting meaning" that renders them actionable. Pl. Opp. at 8–9. But again, the terms at issue here—"dirtiest" and "the most filthy"—are inherently understood to be hyperbolic because they are the "superlative of an adjective that conveys an inherently subjective concept." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (finding that inclusion of plaintiff's hotel on list of "world's dirtiest hotels" was protected opinion). Statements containing such superlatives are, therefore, "appropriately labeled hyperbole and opinion" because such terms do not carry a precise meaning. *Sabratek Corp. v. Keyser*, No. 99 Civ. 8589, 2000 WL 423529, at *6 (S.D.N.Y. Apr. 19, 2000) (concluding that statements calling plaintiff "the biggest pathological liar in the world," and "a dirty liar" were hyperbolic, and therefore non-actionable).

Second, SuperCom suggests—implausibly—that the "truthfulness of th[ese] statement[s] [is] . . . measurable through an investigation of [Grundstein's] prior business relationships." Pl. Opp. at 5. SuperCom suggests, for instance, that if Grundstein had "previously been defrauded" or been the victim of embezzlement in another business dealing, "his instant statement would be false." *Id*. But, as stated, terms like "the dirtiest we have ever dealt with" or "the most filthy individuals" are hyperbolic, subjective descriptors, rather than an objective standard by which to measure Grundstein's other business relationships. Because such terms "may mean different

things to different people," they are "not capable of being proven true or false because of [their] subjective, relative meaning." *Mirage Entertainment, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37 (S.D.N.Y. 2018) (citation omitted).

Finally, the context in which these statements were made further supports their categorization as hyperbolic opinion, rather than statements of fact. In the remainder of the email at issue, Grundstein expresses frustration at Sabby being "inappropriately charged" additional fees in connection with the executed share transfer, threatens to sue SuperCom for breach of contract, and refuses to return the transferred shares until Sabby is compensated for the fees they incurred. *See generally* Email. The parties were, accordingly, "engaged in economic warfare and the terms used were an evaluation of the conduct" of the other party. *Rizzuto v. Nexxus Products Co.*, 641 F. Supp. 473, 481–82 (S.D.N.Y. 1986) (concluding defendants' labeling of plaintiffs as "unscrupulous salespeople," among other terms, was non-actionable opinion rather than statement of fact). In such circumstances, any reasonable reader would understand that Grundstein was employing subjective epithets to characterize SuperCom's conduct out of frustration, rather than making factual statements.

    B.  Pure Opinion

Once the Court determines that the statements at issue are opinions, it must then determine whether they are "pure opinions," which are never actionable," or "mixed opinions," which are actionable under certain circumstances. *Chau v. Lewis*, 935 F. Supp. 2d 644, 658 (S.D.N.Y. 2013). A "pure opinion" either is "accompanied by a recitation of the facts upon which it is based" or "does not imply that it is based upon undisclosed facts." *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986). A "mixed opinion," however, "implies that it is based upon facts which justify the opinion but are unknown to those reading . . . it." *Id.* at

552–53.  The actionable element of a mixed opinion is "the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking."  *Id.* at 553.  SuperCom argues that if the Court finds Grundstein's statements to be opinions, it should deem them to be "mixed opinions," because the statements "imply[] . . . facts that the general reader is not privy to," supporting the idea that "[SuperCom] comes in last place in terms of honesty, integrity [and] morality."  Pl. Opp. at 8.  The Court disagrees.

In distinguishing between "pure" and "mixed" opinions, the Court must "decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion."  *Steinhilber*, 501 N.E.2d at 553.  In the email, Grundstein states that Sabby was "inappropriately charged" for executing the share transfer, that Sabby will not return the shares until they are "made whole on these charges," and threatens to sue Sabby for breach.  Email at 1.  No reasonable reader would assume Grundstein's characterizations of Sabby as "the dirtiest we have dealt with " and "the most filthy individuals" to be based on undisclosed facts beyond Grundstein's obvious frustration with the unwarranted charges associated with the share transfer at issue and Sabby's demand that the shares be returned.  The context plainly demonstrates that these are "figurative statements meant to highlight [Sabby's] dissatisfaction with [SuperCom]" and their business dealings at the time.  *Mirza v. Amar*, 513 F. Supp. 3d 292, 299 (E.D.N.Y. 2021).  Accordingly, the Court finds that Grundstein's statements constitute pure opinions, which, under New York law, are not actionable for defamation.

C. Propriety of Dismissal

SuperCom argues that courts "disfavor[] dismissing a defamation claim on the grounds it constitutes mere opinion, prior to discovery." Pl. Opp. at 6. But, courts in this district have repeatedly concluded that there is "particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro*, 883 F. Supp. 2d at 467 (quotation marks omitted) (citing *Armstrong v. Simon & Schuster*, 649 N.E.2d 825, 828 (N.Y. 1995)). And courts have, therefore, dismissed claims for defamation at the motion to dismiss stage upon a finding that, as here, the challenged statements constitute unactionable opinions. *E.g.*, *Ganske v. Mensch*, 480 F. Supp. 3d 542, 557 (S.D.N.Y. 2020). Therefore, there is no procedural bar to the Court's dismissal of SuperCom's defamation claim at this stage of the proceedings.

**CONCLUSION**

For the reasons stated above, Sabby's motion to dismiss the sixth cause of action in the complaint is GRANTED. The Clerk of Court is directed to terminate the motion pending at ECF No. 21.

SO ORDERED.

Dated: February 17, 2022
New York, New York