# **Exhibit B**

6277137-1

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---

SABBY VOLATILITY WARRANT MASTER FUND LTD.,

          Plaintiff,

-against-

SUPERCOM, LTD.,

          Defendant.

Index No.

**COMPLAINT**

---

Plaintiff Sabby Volatility Warrant Master Fund Ltd. ("Sabby"), by its attorneys and for its Complaint against Defendant SuperCom, Ltd. ("SuperCom" or the "Company"), respectfully alleges, as follows:

<u>The Parties and Jurisdiction</u>

1. Plaintiff Sabby is a company formed under the laws of the Cayman Islands with its principal place of business in George Town, Cayman Island. Sabby invests in startup and growth companies.

2. Defendant SuperCom is an Israeli corporation with its principal place of business in Tel Aviv, Israel. SuperCom provides digital identity, Internet of Things and connectivity, and cyber security products and solutions to governments, and private and public organizations worldwide. SuperCom's shares trade on the NASDAQ Stock Market under the symbol "SPCB."

3. This Court has personal jurisdiction over SuperCom because the Securities Purchase Agreement pursuant to which it sold the securities at issue to Sabby contains SuperCom's consent to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan and its irrevocable waiver of any claim that it is not

personally subject to the jurisdiction of any such court. The agreements at issue are governed by New York law and involve more than one million dollars.

### Sabby's Investment in Defendant

4. On or about July 7, 2020, Sabby entered into a Securities Purchase Agreement (SPA") with defendant to purchase 1,480,000 shares of defendant's common stock plus additional warrants for approximately $2,000,000. The shares were issued with restrictive legends and therefore not eligible for immediate resale in the public markets. Sabby could not sell its shares until they were registered with the Securities and Exchange Commission ("SEC"), a process that requires the filing of a registration statement with the SEC and for that statement to become "effective," a term of art indicating that the SEC has approved the registration statement or waived its right of review.

### The Registration Rights Agreement

5. As part of its investment, Sabby and defendant also entered into a Registration Rights Agreement which set strict deadlines for defendant to file a registration statement and for that registration statement to become effective. In fact, defendant insisted that Sabby pay a higher price for the shares in exchange for the registration timetable that Sabby demanded as a condition for its investment.

6. In Section 2(d) of the Registration Rights Agreement, Defendant committed to filing a registration statement within 15 calendar days after the closing of the SPA and further agreed that the registration statement would become "effective" within 45 days after the closing. The failure to meet either deadline was defined in Section 2(d) as an "Event Date." Section 2(d) provided Sabby with the following remedy upon any "Event Date:"

> … on each such Event Date and on each monthly anniversary of each such Event Date (if the applicable Event shall not have been cured by such date) until the applicable Event is cured, the

> Company shall pay to each Holder an amount in cash, as partial liquidated damages and not as a penalty, equal to the product of 2% multiplied by the aggregate Subscription Amount paid by such Holder pursuant to the Purchase Agreement. If the Company fails to pay any partial liquidated damages pursuant to this Section in full within seven days after the date payable, the Company will pay interest thereon at a rate of 16% per annum (or such lesser maximum amount that is permitted to be paid by applicable law) to the Holder, accruing daily from the date such partial liquidated damages are due until such amounts, plus all such interest thereon, are paid in full. The partial liquidated damages pursuant to the terms hereof shall apply on a daily pro rata basis for any portion of the month prior to the cure of an Event.

<u>Defendant's Breach of the Registration Rights Agreement</u>

7. Defendant failed to file a registration statement by July 22, 2020, the fifteenth day after closing. An "Event Date" occurred on July 22, 2020, and Defendant then owed $39,960 in liquidated damages. Defendant also failed to obtain an effective registration statement within 45 days after closing, namely by August 21, 2020, causing a second Event Date. Defendant has still not filed a registration statement. Liquidated damages continue to accrue under Section 2(d).

8. On August 25, 2020 Sabby sent defendant an invoice for $79,920 representing the amount then due, exclusive of interest, for the first Event Date and its monthly anniversary. Defendant has refused to pay the invoice. The sums for the second Event Date were due no later than August 28, 2020.

9. Defendant's default under the Registration Rights Agreement is ongoing, entitling Sabby to additional liquidated damages in accordance with Section 2(d).

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

10. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs.

5513518-2

11. The Securities Purchase Agreement and the Registration Rights Agreement are binding and enforceable contracts.

12. Plaintiff performed all of its obligations under the Securities Purchase Agreement and the Registration Rights Agreement.

13. As a direct, proximate and foreseeable result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be determined at trial, but currently estimated to exceed $200,000.

14. Under the Registration Rights Agreement, Plaintiff is also entitled to prejudgment interest at the rate of 16% per annum until paid in full.

15. Under Section 5.09 of the SPA, Sabby is also entitled to an award of its attorneys fees incurred in the investigation, preparation and prosecution of this case.

WHEREFORE, Plaintiff respectfully request judgment as follows:

A. On the first cause of action, for damages in an amount to be determined at trial, but estimated to exceed $200,000.

B. Grant all other relief to which the Plaintiff may be justly entitled.

Dated: September 2, 2020
New York, New York

OLSHAN FROME WOLOSKY LLP

By: *Thomas J. Fleming*
Thomas J. Fleming
*Attorneys for Plaintiff*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
(212) 451-2222
tfleming@olshanlaw.com