```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/6/2022_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUPERCOM, LTD.,

                       Plaintiff,

-against-

SABBY VOLATILITY WARRANT MASTER FUND LTD. and WEDBUSH SECURITIES, INC.,

                       Defendants.

No. 21 Civ. 2857 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, SuperCom Ltd. ("SuperCom"), brings this action for fraud, breach of contract, negligence, and violation of federal securities laws against Defendants Sabby Volatility Warrant Master Fund Ltd. ("Sabby") and Defendant Wedbush Securities, Inc. ("Wedbush"). Compl. ¶¶ 24–64, ECF No. 1-1. Before the Court is Wedbush's motion to dismiss SuperCom's securities fraud cause of action,[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to plead misrepresentation with sufficient particularity under Fed. R. Civ. P. 9(b), and failure to state a claim under the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4b. Wedbush Mot., ECF No. 41; Wedbush Mem. at 1, ECF No. 42. For the reasons stated below, the motion is GRANTED.

### BACKGROUND[2]

    Plaintiff, SuperCom, is an Israeli corporation engaged in the design, manufacture, and sale of radio frequency identification products. Compl. ¶ 1. Defendant, Sabby, is a private

---

[1] SuperCom withdrew its negligence claim against Wedbush, and that cause of action is, therefore, DISMISSED. *See* ECF No. 27 at 3. The only remaining claim against Wedbush is SuperCom's cause of action for securities fraud. Compl. ¶¶ 44–52.

[2] The facts in this section are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

equity fund with its principal place of business in the Cayman Islands. *Id.* ¶ 2. Defendant, Wedbush, is a broker-dealer. *Id.* ¶ 3. On July 7, 2020, SuperCom and Sabby entered into a stock purchase agreement, allowing Sabby to purchase a portion of SuperCom's equity shares. *Id.* ¶ 5. Sabby and SuperCom also entered an agreement (the "Warrant Agreement") allowing Sabby to buy additional equity shares of SuperCom in the future at a set price (the "Warrant"). *Id.* The Warrant Agreement gave Sabby the right to execute a "cashless exercise" of the Warrant if it met the terms set forth in the Warrant Agreement and applicable law, including providing notice to SuperCom. *Id.* ¶ 6. SuperCom could object to the exercise within two business days, pursuant to the Warrant Agreement. *Id.* ¶ 7.

On March 19, 2021, Sabby sought to execute a cashless exercise of the Warrant, and took steps to initiate the electronic transfer through the "Deposit/Withdrawal at Custodian" ("DWAC") system. *Id.* ¶¶ 8, 16. The same day, Rob Grundstein, Sabby's Chief Operating Officer and General Counsel, sent an email to Arie Trabelsi, of SuperCom, as well as to Wedbush, the broker-dealer for the transaction, notifying them of the cashless exercise pursuant to the Warrant Agreement. *Id.* ¶ 10. This email was improperly transmitted, and Trabelsi did not receive it until March 23, 2021. *Id.* ¶ 13. In an email dated March 23, 2021, SuperCom informed Sabby that its warrant exercise notice was invalid, and directed Sabby to send a new notice that complied with the Warrant Agreement. *Id.* ¶ 14. However, Grundstein allegedly misrepresented to Wedbush that Sabby had authority to obtain the equity shares, in order to convince Wedbush to execute the transfer with SuperCom's transfer agent, American Stock Transfer & Trust Company ("AST"). *Id.* ¶ 15.

At some point, Trabelsi informed Doreen Pappas, Wedbush's vice-president, that SuperCom had not approved the share issuance, and any initiation of the DWAC transfer was

2

"illegal." *Id.* ¶ 16. SuperCom also alleges that both Sabby and Wedbush were aware that new SuperCom shares "needed to be issued pursuant to the requirements set forth by [Securities and Exchange Commission ("SEC")] Rule 144,"[3] that is, pursuant to an opinion letter from SuperCom's counsel (the "Rule 144 Letter"). *Id.* ¶ 20. However, SuperCom alleges that "[d]espite these explicit instructions, Wedbush resubmitted the DWAC electronic transfer" with AST in order to "deceive AST and fraudulently issue and deliver to Sabby 647,000 unauthorized shares." *Id.* ¶ 17.

SuperCom alleges that "[d]ue to Sabby's misrepresentations, Wedbush intentionally and illegally misled SuperCom's transfer agent to issue and transfer unauthorized tradable 647,000 new [SuperCom] equity shares [] to Sabby's brokerage account." *Id.* ¶ 18. It also alleges that Wedbush "deliberately acted against SEC regulations and caused AST to issue new tradable shares while violating SEC regulations." *Id.* ¶ 21. SuperCom claims that Sabby was "forced to return its shares to SuperCom" after "[r]ealizing its deceitful and illegal actions." *Id.* ¶ 22.

## DISCUSSION

I. Legal Standard

A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept

---

[3] SEC Rule 144 allows the public resale of restricted and control securities if certain conditions are met. *See* Secs. & Exch. Comm., *Rule 144: Selling Restricted and Control Securities* (Jan. 16, 2013), sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html.

the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

      B.  Securities Fraud Claims

Because SuperCom alleges securities fraud claims against Wedbush, such claims are "subject to heightened pleading requirements" to survive a motion to dismiss, set forth in Rule 9(b) of the Federal Rules of Civil Procedure, and the PSLRA. *ATSI Commc'ns*, 493 F.3d at 99. Under Rule 9(b), averments of fraud must be "state[d] with particularity," Fed. R. Civ. P. 9(b), that is, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citation omitted). Similarly, the PSLRA requires that any securities fraud complaint alleging misleading statements or omissions of material fact must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). This heightened particularity requirement applies to securities fraud claims brought under Section 10(b) and Rule 10b–5. *See, e.g.*, *Rombach*, 355 F.3d at 170; *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168–70 (2d Cir. 2000). And, conclusory

allegations, or those unsupported by factual assertions, are insufficient. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

II. Misrepresentation

SuperCom alleges that Sabby and Wedbush violated Rule 10b-5, promulgated under Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), by making misrepresentations in connection with the share transfer at issue. Compl. ¶¶ 44–52; *see also* 17 C.F.R. § 240.10b-5. "To state a claim under Rule 10b–5 for misrepresentation, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns*, 493 F.3d at 105. Wedbush argues that SuperCom has failed to plead several of these elements with sufficient specificity under the heightened pleading standard imposed by Rule 9(b) and the provisions of the PSLRA. Wedbush Mem. at 7–9. The Court examines each element in turn.

A. Misstatements and Omissions

Wedbush argues that SuperCom does not allege any specific misstatements or omissions of material fact made by Wedbush. Wedbush Mem. at 9–10. The Court agrees. A securities fraud complaint based on misstatements must specify the allegedly fraudulent statements, identify the speaker, as well as the time and place where these statements were made, and explain why the statements are fraudulent. *ATSI Commc'ns*, 493 F.3d at 99 (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). SuperCom alleges only that Wedbush "intentionally and illegally misled SuperCom's transfer agent [ATF] to issue" the shares. Compl. ¶ 18. This conclusory assertion is insufficient to state a misrepresentation claim, because it fails to specify the fraudulent statements or omissions Wedbush made to ATF in order to cause ATF to

effectuate the transfer of the shares. *See In re Parmalat Sec. Litig.*, No. 04 Md. 1653, 2007 WL 656845, at *1 (S.D.N.Y. Feb. 28, 2007).

In its opposition papers, SuperCom argues that "Wedbush committed a misrepresentation" by initiating the DWAC transfer, because in "doing so, Wedbush represented that it had SuperCom's authorization to obtain the shares." SuperCom Opp'n at 5, ECF No. 48. The complaint also states that Wedbush "resubmitted" the transfer request even though Trabelsi informed Pappas, Wedbush's vice president, that SuperCom had not approved it. Compl. ¶¶ 16–18. But, not only does this limited factual allegation fail to establish the exact sequence of events at issue,[4] it also identifies no specific statements or omissions made by Wedbush in either initiating or resubmitting the transfer, describe by whom, when and where they were made, or provide a basis for why such statements were fraudulent. Indeed, the only specific misrepresentations identified in the complaint were all made by a Sabby employee to Wedbush. *See, e.g.*, Compl. ¶¶ 15, 49–50. Accordingly, because SuperCom "point[s] to no specific statements whatsoever, let alone who made the statements," its allegations are "wholly

---

[4] SuperCom appends to its opposition papers an affidavit from Trabelsi and copies of an email exchange between Trabelsi, Pappas, and others, that purportedly support their version of events. *See* ECF No. 50. SuperCom states that the Court may consider the emails, ECF Nos. 50-1, 50-2, because they are referenced in the complaint. SuperCom Opp'n at 2 n.2. To warrant treatment of a document as incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 331 (S.D.N.Y.2003). The complaint states only that Trabelsi "explicitly informed" Pappas that SuperCom did not approve the share issuance, and that Wedbush then resubmitted the transfer, Compl. ¶¶ 16–18, with no reference to the method of communication or execution of these actions, no specific timeframe for these events, or any direct quotes from the emails at issue. Therefore, the Court finds that the complaint does not make a sufficiently clear, definite, or substantial reference to the emails, and shall not consider the affidavits and emails.

In addition, SuperCom asks the Court to consider Trabelsi's affidavit, ECF No. 50, as an amendment to the complaint, relying on *Fonte v. Bd. of Managers*, 848 F.2d 24, 25–26 (2d Cir. 1988). SuperCom Opp'n at 2 n.2. In *Fonte*, the Second Circuit noted in dicta that the district court could have considered an affidavit attached to the plaintiff's opposition papers as an amendment to the complaint. Courts in this Circuit, however, generally only treat an affidavit as an amendment to the complaint where a plaintiff proceeds *pro se*. *See, e.g.*, *Baldwin v. LIJ North Shore Health Sys.*, 392 F. Supp. 2d 479, 481 (E.D.N.Y. 2005). And, here, not only is SuperCom represented by experienced counsel, but the Court's Individual Practices in Civil Cases specifically give plaintiffs an opportunity to amend their complaint following the exchange of pre-motion letters in advance of a motion to dismiss. Thus, SuperCom had ample opportunity to avoid extended motion practice and file an amended complaint, but chose not to do so. The Court, therefore, declines to consider Trabelsi's affidavit as an amendment to the complaint.

insufficient to state a claim for securities fraud." *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 490 (S.D.N.Y. 2009).

### B. Scienter

The PLSRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "To establish liability for a Section 10(b) or Rule 10b-5" claim, a plaintiff "must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation and quotation marks omitted). To be considered "strong," the inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. A plaintiff may allege scienter by either "(1) showing the defendants' motive and opportunity to perpetrate fraud, or (2) alleging strong circumstantial evidence of conscious misbehavior or recklessness." *Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche, LLP*, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013) (citation, quotation marks, and emphasis omitted).

To establish motive, a plaintiff must "assert a concrete and personal benefit" to the defendants who allegedly perpetrated the fraud. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). The Court agrees with Wedbush that, because the complaint is entirely devoid of any factual allegations suggesting Wedbush benefitted or profited from the scheme at issue, SuperCom has failed to establish motive. Wedbush Mem. at 11–13. In its opposition papers, SuperCom raises for the first time that Wedbush "had pecuniary motive in the form of fees assessed to Sabby for effectuating the transfer." SuperCom Opp'n at 6. But, no such factual allegations are pleaded in the complaint, and new facts raised in a plaintiff's opposition papers

7

may not be considered in deciding a motion to dismiss.  *See Univ. Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877, 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012).  And, moreover, an allegation that a defendant received its "usual fees" or the "mere receipt of compensation" does not, without more, "constitute a sufficient motive for purposes of pleading scienter."  *Zucker v. Sasaki*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997).  SuperCom has failed, therefore, to plead scienter by means of establishing Wedbush's motive to perpetrate fraud.

SuperCom also fails to allege "strong circumstantial evidence" of conscious misbehavior or recklessness.  "Conscious misbehavior or recklessness" is a "state of mind approximating actual intent, which can be established by conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (citations and quotation marks omitted).  Where a plaintiff fails to allege motive, and "relies entirely on allegations of recklessness in asserting scienter, the evidence presented must be proportionally greater."  *Zucker*, 963 F. Supp. at 309 (citation omitted).  Such evidence may include allegations that defendants "(1) engaged in deliberate illegal behavior, (2) knew facts or had access to information suggesting their public statements were not accurate, or (3) failed to check information they had a duty to monitor."  *Okla. Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 36 (S.D.N.Y. 2019) (citation and quotation marks omitted).

SuperCom fails to allege any such circumstantial evidence here.  SuperCom claims only that Wedbush knew, and "deliberately acted against" a requirement that any issuance of new shares required a letter from SuperCom's counsel, pursuant to SEC Rule 144.  Compl. ¶¶ 20–21.

In its opposition papers, SuperCom argues that Wedbush's request for the share transfer without this letter was "highly unreasonable." SuperCom Opp'n at 7. But, it is well-established that "[a]llegations of a violation of . . . SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996).

Similarly, SuperCom argues it was "highly unreasonable" for Wedbush to initiate the share transfer without the consent of both parties. SuperCom Opp'n at 7; *see also* Compl. ¶ 20. Even if true, SuperCom must "specifically allege [Wedbush's] knowledge of facts or access to information contradicting their public statements." *Kalnit*, 264 F.3d at 142 (citation omitted). SuperCom does not claim that Wedbush knew of SuperCom's rejection of the share issuance prior to Wedbush's initiation of the DWAC transfer. And, the timeline of SuperCom's allegations do not establish that Wedbush resubmitted the transfer after Trabelsi informed Pappas that SuperCom did not consent to the transfer request, or that Pappas or Wedbush made representations to AST that contradicted Trabelsi's statements. *See* Compl. ¶¶ 16–17. This allegation is, therefore, insufficient to demonstrate that Wedbush made any representation inconsistent with the facts known to it, let alone that Wedbush's behavior was "highly unreasonable" or an "extreme departure" from ordinary standards of care. *City of Pontiac Policemen's*, 752 F.3d at 184.

Finally, SuperCom argues that the fact that Wedbush ultimately returned the shares to SuperCom's transfer agent demonstrates "its knowledge that it engaged in reckless conduct." SuperCom Opp'n at 7. But again, the complaint contains no factual allegations to support this argument, stating only that "Sabby was forced to return its shares to SuperCom." Compl. ¶ 22. This statement reveals nothing about Wedbush's state of mind—and indeed, the "much more

compelling conclusion" is that Wedbush merely followed its client's directive to reverse the transfer, rather than returning the shares of its own accord. *In re Bank of America AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 587–88 (S.D.N.Y. 2013). Accordingly, this allegation fails to establish scienter. *See id.*

      C. Reliance

To state a misrepresentation claim under Section 10(b), a plaintiff must allege that it reasonably relied on the defendant's misrepresentations to its detriment—that is, that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental . . . transaction." *ATSI Commc'ns*, 493 F.3d at 106 (citation omitted). Wedbush argues—and SuperCom does not dispute—that the complaint contains no allegations that SuperCom relied on any of Wedbush's statements or representations. Wedbush Mem. at 13–15; SuperCom Opp'n at 8–9. But, SuperCom argues that its transfer agent, AST, relied on Wedbush's misrepresentations to initiate the share transfer. SuperCom Opp'n at 8–9.

Certainly, a principal may recover for misrepresentations relied on by an agent, provided that the agent's reliance is reasonable. *Municipality of Bremanger v. Citigroup Global Mkts. Inc.*, No. 09 Civ. 7058, 2013 WL 1294615, at *19 (S.D.N.Y. Mar. 28, 2013). But here, not only has SuperCom failed to plead any misstatements Wedbush made to AST, the complaint also contains no factual allegations that AST relied on these misrepresentations, or that such reliance was reasonable under the circumstances. Indeed, the only allegation related to reliance in the complaint is that "*Wedbush* reasonably relied on Sabby's misrepresentation" that SuperCom had authorized release of the shares at issue. Compl. ¶ 29 (emphasis added). Therefore, SuperCom

10

has not sufficiently pleaded reliance—either its own, or that of its agent—on Wedbush's misrepresentations, and its claim fails for this reason as well.[5]

## CONCLUSION

For the reasons stated above, Wedbush's motion to dismiss SuperCom's claim against it is GRANTED, and Wedbush is DISMISSED from this action. The Clerk of Court is directed to terminate the motion at ECF No. 41, and terminate Wedbush from this action.

SO ORDERED.

Dated: July 6, 2022
       New York, New York

                                      ANALISA TORRES
                                      United States District Judge

---

[5] Because the Court finds that SuperCom has failed to adequately plead at least three elements of their securities fraud claim against Wedbush, it need not address the sufficiency of the remaining elements, including loss causation. *See Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015).