```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
  SUPERCOM, LTD.,

                                     Plaintiff,

                  -against-

  SABBY VOLATILITY WARRANT MASTER
  FUND LTD. and WEDBUSH SECURITIES,
  INC.,

                                     Defendants.
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/7/2022

**OPINION AND ORDER ON MOTION TO PRECLUDE EXPERT REPORT**

**21-CV-2857 (AT)(KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Defendants Sabby Volatility Warrant Master Fund Ltd. ("Sabby") and Wedbush Securities, Inc. ("Wedbush") move to preclude the expert report of Dr. Tal Mofkadi, Plaintiff SuperCom Ltd.'s ("SuperCom") expert.[1] (ECF Nos. 109-11.) Plaintiff also moves to seal the expert report. (ECF No. 100.) For the following reasons, Defendants' motion is DENIED without prejudice and Plaintiff's motion to seal is also DENIED.

The underlying factual allegations are presumed and included below as necessary.[2] In sum, Plaintiff alleges that Sabby initiated a cashless exercise of 647,000 SuperCom shares on March 19, 2021 which Wedbush, a broker-dealer, helped facilitate without SuperCom's authorization on March 23, 2021.[3] Upon protest, the shares were returned to SuperCom on March 23, 2021, the same day they were transferred. SuperCom alleges that it was damaged

---

[1] After the instant motion was fully briefed, on July 6, 2022, the Honorable Analisa Torres granted Wedbush's motion to dismiss. (*See* ECF No. 118.) Thus, the only remaining Defendant is Sabby.
[2] For a full recitation of the facts see *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 2022 WL 493600, at *1 (S.D.N.Y. Feb. 17, 2022).
[3] Although the complaint lists 647,000 shares, Dr. Mofkadi's report and Defendant Sabby's moving brief notes 624,217 shares. Plaintiff's opposition notes 647,000 shares. Accordingly, the Court uses 647,000 shares.

by the unauthorized transfer. To support its theory of damages, Plaintiff provided Defendants with Dr. Mofkadi's expert report where he identified "three verticals" of damages. Of note, Sabby is suing SuperCom in a separate litigation in New York State Court for breach of contract. (*See* Defs. Mot. to Preclude, Ex. B.)

For his first "vertical" of damages, Dr. Mofkadi concludes that SuperCom's effective annual cost of borrowing rose due to the litigation with Sabby causing estimated damages of $3.6 million. (Defs. Mot. to Preclude, Ex. A, ("Mofkadi Report"), pp. 2, 4.) Dr. Mofkadi notes that SuperCom invests heavily in research and development and has yet to reach its full potential. He further states that "due to the various actions of Sabby related to SuperCom, SuperCom found it increasingly difficult to raise money through the equity capital market" and "SuperCom encountered rejections from investment banks and potential equity investors because of the litigation with Sabby[.]" (Mofkadi Report, p. 6-7.) This led SuperCom to turn to subordinate debt financing where it raised $12 million in 2021 in long-term capital with an annual 15% interest rate. (*Id.*) The $3.6 million loss cited in the Report represents the total amount of interest allegedly paid on the subordinated debt over a two-year term. (*Id.*)

For his second "vertical" of damages, Dr. Mofkadi concludes that the negative effect on SuperCom's valuation due to the litigation increased the effective annual cost of existing debt causing estimated damages of $2.4 Million. (Mofkadi Report, pp. 2, 7.) He notes that "[a]nother indirect but substantial damage to SuperCom was inflicted by Sabby and this damage is reflected through a decrease in the company's valuation" by "the inappropriate

2

actions of Sabby [which] increased the total risk of the company" causing SuperCom to "borrow at 15%." (*Id.* at 7, 9.)

For his third "vertical" of damages, Dr. Mofkadi concludes that "Sabby entered [in]to an aggressive short position and sold shares that it did not own and later stole[.]" (*Id.* at 9-10.)  He notes that on March 19, 2021, Sabby made an extremely aggressive sale of shares it did not own by assuming it had the 624,217 shares from the warrant exercise, and only entered that position based on that assumption. (*Id.*)  Further, when Sabby realized that the warrant exercise was invalid, it stole the shares to complete the sale, which it returned on March 23, 2021. (*Id.*)  On March 19, 2021, SuperCom's stock was worth $2.94 per share and moved lower to $1.84 per share when returned on March 23, 2021.  Dr. Mofkadi concludes that Sabby made a profit of $686,636 when it closed out these short positions, achieved only through the theft, resulting in a mirror loss to SuperCom. (*Id.* at 11.)

In his clarifying report dated April 12, 2022, Dr. Mofkadi provides the compensation he has received, lists the documents he relied upon, publications he has authored, and court cases where he has testified as an expert in the past four years, but does not provide the jurisdiction in which he has provided expert testimony.  Of note, Dr. Mofkadi states that he has "extensive experience in consulting and writing economic expert opinions in Israel." (Mofkadi Clarifying Report, p. 3.)

## PROCEDURAL HISTORY

On September 15, 2021, the Honorable Analisa Torres issued an order extending expert discovery to December 15, 2021 and noted that further extensions would not be granted.  (ECF

3

No. 46.) The matter was then referred to me for general pretrial supervision. (ECF No. 52.) Upon the parties' joint request, the Court extended expert discovery to February 18, 2022. (ECF No. 66.) Plaintiff requested an additional extension to complete expert discovery to March 30, 2022, which the Court granted. (ECF No. 75.) On February 15, 2022, Plaintiff requested a further extension to April 29, 2022, which the Defendants opposed. (ECF Nos. 85-87.) The Court granted a limited extension to complete expert discovery to April 15, 2022. (ECF No. 88.) Despite the multiple extensions, Plaintiff failed to serve its expert report on Defendants according to the court-ordered deadline and Defendants refused to accept it, which led Plaintiff to move to serve its report. (ECF No. 92.) Defendants also sought to preclude the expert report pursuant to Federal Rule of Civil Procedure 37. After holding a case management conference on April 7, 2022, the Court permitted Plaintiff to serve its report *nunc pro tunc* and set the instant briefing schedule. (ECF No. 108.) Plaintiff provided Defendants a supplemental report on April 12, 2022. Additionally, in its opposition, Plaintiff appended a declaration by Dr. Mofkadi, dated May 24, 2022, providing further clarification of his report. (ECF No. 114-5.) In this declaration, Dr. Mofkadi states he "is testifying on his professional analysis of the case and facts, as presented to him by the customer."

**DISCUSSION**

I. **Legal Standard**

  a. **Federal Rule of Civil Procedure 26**

Rule 26(a)(2) provides that when a party discloses an expert witness, the disclosure "must be accompanied by a written report—prepared and signed by the witness[.]" Fed. R. Civ.

P. 26(a)(2)(B).  The report must contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." *Id.* at (i)-(vi).

Importantly, the written report must be "detailed and complete." *Giladi v. Strauch*, 2007 WL 415365 at *7 (S.D.N.Y. Feb. 6, 2007).  To satisfy Rule 26(a)(2), an expert report "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions [and] explain factually why and how the witness has reached them." *Whalen v. CSX Transp., Inc.*, 2016 WL 5660381, at *4 (S.D.N.Y. Sept. 29, 2016).  Rule 26(a)(2) expert disclosures, including complete written reports, must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  "The purpose of the expert disclosure rules is to avoid surprise or trial by ambush." *Harkabi v. SanDisk Corp.*, 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012).

### b. Federal Rule of Civil Procedure 37

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Allen v. Koenigsmann*, 2021 WL 1552771, at *2 (S.D.N.Y. Apr. 20, 2021) (quoting Fed. R. Civ. P. 37(c)(1)).

5

"Although Rule 37(c)(1) is written in mandatory terms, the imposition of sanctions for abuse of discovery is a matter within the discretion of the trial court." *Id.* (quoting *Olutosin v. Gunsett*, 2019 WL 5616889, at *4 (S.D.N.Y. Oct. 31, 2019)). The preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution. *See In re Specialist & Other Vessel Owner Limitation Actions*, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (citation omitted); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 138 F.Supp.3d 352, 398-99 (S.D.N.Y. 2015) ("[E]xcluding expert testimony is a drastic remedy, and should be used sparingly, even when there has not been strict compliance with Rule 26, because exclusion may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.").

The court's decision to impose sanctions, including preclusion, should be informed by several factors, to include: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007) (citing *Softel*, 118 F.3d at 962).

### c. Motion to Seal

The First Amendment accords a strong presumption of public access to pleadings and other judicial documents that "have historically been open to the press and general public" and

6

"play[ ] a significant positive role in the functioning of the [judicial] process[.]" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (internal quotation marks and citation omitted); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Once triggered, the First Amendment "requires a court to make specific, rigorous findings before sealing [a] document or otherwise denying public access" to the judicial record. *Bernstein*, 814 F.3d at 141 (internal quotation marks and citation omitted). "[T]he presumptive right of access prevails unless it is overcome by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Newsday LLC v. County of Nassau,* 730 F.3d 156, 165 (2d Cir. 2013) (internal quotation marks and citation omitted). Thus, once a document is "judicial," the presumption of public access is weighed against the "danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

As opposed to such judicial documents, however, documents passed between parties (or the Court) in discovery "lie entirely beyond the presumption's reach." *Amodeo*, 71 F.3d at 1050. Even when the Court assesses such documents in the context of a discovery motion, the documents remain non-judicial and the presumption is minimal. *Uni-Sys., LLC. v. United States Tennis Ass'n, Inc.*, 2020 WL 8266015, at *8 (E.D.N.Y. July 6, 2020) (citing *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999)). Nonetheless, the court must still balance the right to public access, against the private interests of the parties to determine a whether or not to seal document. *Id.*

7

II. Analysis

    a. Dr. Mofkadi's Report is not Sufficiently Detailed

The main question before the Court is whether Dr. Mofkadi's report is sufficiently detailed to comply with Rule 26(a)(2). And if not, whether preclusion is warranted under Rule 37.

Here, the expert report of Dr. Mofkadi is vague as to the first two damage verticals he identifies. Rule 26 requires that an expert provide the substantive basis and reasons for reaching his conclusions and the facts considered by the witness in forming them. *See Whalen*, 2016 WL 5660381, at *4. Dr. Mofkadi's damages calculations appear to include damages caused by the litigation between Supercom and Sabby. Firstly, the increased borrowing cost of either litigation is not relevant to the damages alleged in this action, which is the improper transfer of shares to Sabby. Secondly, assuming *arguendo* the instant litigation is relevant, it is unclear whether Dr. Mofkadi is referring to this action or the one filed in New York state court. To the extent that SuperCom's borrowing costs increased due to the state court action or before the warrant exercise, Dr. Mofkadi should provide greater clarity. For example, Dr. Mofkadi can include the dates as to when the borrowing cost increased and provide evidence to support that conclusion. Thus, without greater clarity as to how and when the damages occurred, Sabby is unlikely to be able to adequately challenge Dr. Mofkadi's conclusions. *See Great White Bear, LLC v. Mervyns, LLC*, 2008 WL 2220662, at *3 (S.D.N.Y. May 27, 2008) ("A damage figure in an expert report cannot satisfy Rule 26(a)(2) (B) simply by stating a conclusory figure and then attaching documents that purportedly support that figure. Rather, the report

must supply actual calculations with detailed and complete information elucidating how the expert arrived at the damage figure."); *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *6 (E.D.N.Y. July 22, 2019), *report and recommendation adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) ("Damages expert disclosures that fail to disclose the facts underlying the expert's conclusions are deficient.").

Next, Dr. Mofkadi also uses words such as "various actions" and "inappropriate actions" to describe Sabby's conduct that caused the alleged damages. It is unclear whether the various and/or inappropriate actions relate to the cashless warrant exercise of March 19, 2021 or some conduct not subject to this litigation. As to the second vertical, Dr. Mofkadi does not even specifically mention the warrant exercise or related transactions. This falls short of providing the substantive basis to support his conclusions on damages. *See Robinson v. Suffolk Cnty. Police Dep't*, 2011 WL 4916709, at *2 (E.D.N.Y. Oct. 17, 2011), *aff'd*, 544 F. App'x 29 (2d Cir. 2013) (excluding Plaintiff's expert report after finding the expert failed to provide *any* basis or reasoning to support his opinion under Rule 26(a)(2)(B)).

Furthermore, in describing the damages under the first vertical, Dr. Mofkadi states that "it is my understanding that SuperCom encountered rejections from investment banks and potential equity investors explicitly because of the litigation with Sabby" and Sabby threatened to litigate against SuperCom, which would "hinder the company's ability to raise more equity capital." (*See* Mofkadi Report, p. 6.) Defendants correctly note that Dr. Mofkadi does not cite to any evidence in the record to support his conclusion nor does he append any supporting documentation to his report. Defendants also contend that such documentation was not

9

provided in discovery.  Again, Rule 26 requires the expert to disclose the facts or data *considered* in forming their opinions.  Accordingly, Dr. Mofkadi shall supplement his report to identify the basis and facts (either documents or testimony) he considered in forming his opinion and should state in the supplemental report how these facts impacted his damages calculation.  *See Sec. & Exch. Comm'n v. Penn*, 2018 WL 11319021, at *2 (S.D.N.Y. Apr. 18, 2018).

As to the third vertical, the Court finds it is sufficiently detailed under Rule 26.  To the extent Sabby seeks to challenge the rationale or conclusions provided by Dr. Mofkadi, such as why the damages identified is a "conservative measure," it may choose to do so through a deposition of Dr. Mofkadi and/or a rebuttal expert.  (*See* Mofkadi Report, p. 11.)

Defendants also take issue with Dr. Mofkadi's report insofar that he only lists the names of the actions he served as an expert witness in the past four years but does not list the corresponding jurisdictions.  Although Rule 26 does not explicitly require that jurisdictions be provided, it is required under case law and is warranted in this case.  *See Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999) ("Case law establishes that the list of cases in which the witness has testified should at a minimum include the *name of the court* or administrative agency where the testimony occurred, the names of the parties, the case number, and whether the testimony was given at a deposition or trial") (emphasis added).  Here, Dr. Mofkadi admitted that he has "extensive experience in consulting and writing economic expert opinions in Israel," which suggests that at least some of the cases provided are international in nature. (*See* Mofkadi Clarifying Report, p. 3.)  In one instance, Dr. Mofkadi provided testimony in a case

in Singapore. (*Id.* at 4.) Sabby should not have to bear the burden of tracking down where across the globe Dr. Mofkadi provided testimony. Accordingly, Dr. Mofakdi should supplement his report to include the applicable courts and/or jurisdictions.

### b. Preclusion of Dr. Mofkadi's Report is Not Warranted

Although Dr. Mofkadi's report is not complete, preclusion is not warranted. In applying the *Softel* factors noted above, Plaintiff does not provide a sufficient explanation for failing to comply with its Rule 26 obligations, likely because it believes it has. Plaintiff only argues that Rule 26 does not require jurisdictions to be included, but as noted above, relevant case law requires such disclosure. Thus, this factor weighs in favor of preclusion. As to the second factor, the testimony of Dr. Mofkadi is important in this action given the complex calculation of the potential damages Plaintiff has allegedly suffered. It is unlikely that a jury would be able to determine how to value any loss attributable to the allegations made by Plaintiff without expert testimony. Thus, this factor weighs against preclusion. As to the third factor, prejudice, although the Court has granted multiple extensions to the expert discovery schedule, Defendants will not suffer any unique prejudice other than a delay of the final resolution of this case. Defendants admit they have not retained a rebuttal expert or taken any position of consequence based on the inadequacy of Dr. Mofkadi's report. Thus, this factor weighs against preclusion. Lastly, as this case is not yet set for trial, an extension of the expert discovery schedule would prevent the drastic remedy of preclusion. This weighs against preclusion. *See Reyes v. Receivables Performance Mgmt, LLC*, 2021 WL 930000, at *4 (D. Conn. Mar. 11, 2021).

Accordingly, as preclusion is to be exercised with caution, the Court will not preclude Dr. Mofkadi's report at this time.

Plaintiff shall have an opportunity to cure the defects identified above. A complete an updated report shall be served within 30 days of this Opinion and Order. The revised report is to "take the form of one cohesive report, not [a] supplement[ ] to the prior reports prepared by the expert." *Great White Bear*, 2008 WL 220662, at *1. To the extent Plaintiff's report is still deficient, Sabby shall file a letter motion renewing its application within two weeks of being served the updated report. As expert discovery was set to originally close on December 15, 2021, the Court will not be inclined to grant Plaintiff a further opportunity to correct any deficiencies. *See Fung-Schwartz v. Cerner Corp.*, 2020 WL 8771329, at *3 (S.D.N.Y. Nov. 16, 2020) (providing plaintiff an opportunity to correct identified deficiencies in the expert report and allowing defendant to challenge the report if it remained inadequate).

### c. Sealing of Dr. Mofkadi's Report is Unwarranted

Lastly, the Court finds that sealing Dr. Mofkadi's report is unwarranted. Although, the report (and the parties' arguments that rely on the report) are not "judicial" for purposes of a motion to seal, Plaintiff has failed to satisfy its minimal burden to show that there are private interests at stake. Having reviewed the expert report and the supplements, they do not disclose any confidential data or financial analyses; rather they cite to publicly available information provided to government agencies and company press releases. Furthermore, Plaintiff does not identify any specific information included in the report that is business-sensitive or confidential. (*See* ECF No. 100.) Thus, the Court finds no legitimate competitive or

privacy interest at stake that would be impinged through the disclosure of Dr. Mofkadi's report. *See Nichols v. Noom Inc.*, 2021 WL 3914078, at *2 (S.D.N.Y. Sept. 1, 2021). Therefore, Plaintiff's motion to seal is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' motion is DENIED without prejudice. Dr. Mofkadi shall provide an updated expert report within 30 days. Similarly, Plaintiff's motion to seal Dr. Mofkadi's report is DENIED.

**SO ORDERED.**

Dated: July 7, 2022
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge